IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                              :
YEHUDA NORDMAN
                              :

     v.                       :   Civil Action No. DKC 21-1818

                              :
TADJER-COHEN-EDELSON ASSOCIATES,
INC., et al.                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, are (1) the motion to allow Plaintiff to file his motion to extend the time for Plaintiff to file his motion for partial summary judgment filed by Plaintiff Yehuda Nordman ("Plaintiff"), (ECF No. 74); (2) Plaintiff's motion for extension of time to file his motion for partial summary judgment, (ECF No. 75); (3) Plaintiff's motion for partial summary judgment, (ECF No. 77); (4) the cross-motion for summary judgment filed by Defendants Tadjer-Cohen-Edelson Associates, Inc. ("TCE"), Tadjer-Cohen-Edelson Associates, Inc. 401(k) Profit Sharing Plan (the "PS Plan"), Mahmoud "Michael" R. Tabassi ("Mr. Tabassi"), Alireza Tahbaz, Sanjay Khanna, and Soolmaz Abooali ("Ms. Abooali") (collectively, the "Defendants"), (ECF No. 79); (5) Plaintiff's motion for leave to file a surresponse, (ECF No. 84); and (6) Plaintiff's motion for extension of time to file his response to

Defendants' opposition to Plaintiff's motion for leave to file a
surresponse, (ECF No. 86).  The issues have been briefed, and the
court now rules, no hearing being deemed necessary.  Local Rule
105.6.  For the following reasons, (1) Plaintiff's motion for leave
to file his motion to extend the time to file his motion for
partial summary judgment will be granted; (2) Plaintiff's motion
for extension of time to file his motion for partial summary
judgment will be granted; (3) Plaintiff's motion for partial
summary judgment will be granted in part and denied in part; (4)
Defendants' cross-motion for summary judgment will be granted in
part and denied in part; (5) Plaintiff's motion for leave to file
a surresponse will be denied; and (6) Plaintiff's motion for
extension of time to file his response to Defendants' opposition
to Plaintiff's motion for leave to file a surresponse will be
denied as moot.

## I.   Background[1]

Plaintiff, a former employee of TCE, alleges in the Second
Amended Complaint that Defendants committed several violations of
ERISA.  He seeks corrections in his accounts, damages, his
proportionate share of payments that he should have received,
penalties, attorneys' fees and costs, and other equitable relief.

---

[1] Unless otherwise noted, the facts outlined here are
undisputed and based on evidence capable of being admissible at
trial.

TCE has historically sponsored multiple retirement programs. (ECF No. 79-4 ¶ 13).   One of the programs is the PS Plan.   (ECF Nos. 79-4 ¶ 13; 79-5, at 2-83).   On January 1, 2015, the PS Plan merged with the TCE Pension Trust, which included a money purchase benefit (the "MP Plan" or the "Pension Plan").   (ECF Nos. 79-4 ¶ 15; 79-8, at 2-71).   As a result of that merger, the PS Plan now offers a traditional 401(k) benefit, profit-sharing benefit, and pension plan benefit.   (ECF Nos. 79-4 ¶ 16; 79-7, at 5, 6).   TCE employees are eligible to receive the profit-sharing benefit and pension benefit unless certain exceptions apply.   (ECF No. 79-7, at 5).   One exception to eligibility is an express waiver of the right to receive a benefit or participate in a plan.   (ECF No. 79-6, at 6) ("Opt-Out. An Employee may irrevocably elect not to participate in the Plan: [X] Yes [ ] No").   Waiver was also a feature of the MP Plan prior to the merger.   (ECF No. 79-8, at 28) ("3.8 ELECTION NOT TO PARTICIPATE An Employee may, subject to the approval of the Employer, elect voluntarily not to participate in the Plan.").   A second program is the TCE Employee Stock Ownership Plan (the "ESOP").   (ECF Nos. 79-4 ¶ 2; 79-10, at 2).

TCE is the plan administrator of the PS Plan and ESOP.   (ECF Nos. 79-6, at 30; 79-7, at 17).   Because TCE, as a corporate entity, cannot administer its retirement plans on its own, TCE has primarily administered the PS Plan and ESOP through its former president, Zivan Cohen ("Mr. Cohen"), and later Mr. Tabassi, the

managing principal.  (ECF No. 79-4 ¶¶ 1, 8, 12, 18).  The terms of the PS Plan provide that TCE has "total and complete discretionary power and authority" to administer the PS Plan.  (ECF No. 79-5, at 75).

Plaintiff signed waivers of his rights to receive the PS Plan's pension benefit and profit-sharing benefit on November 7, 1988.  (ECF No. 79-9, at 2-3).  In both waivers, Plaintiff wrote that he has decided not to participate in the Plan because he "choose[s] to get higher salary." (*Id.*).

The parties dispute whether Plaintiff applied for membership in the MP Plan (which merged into the PS Plan) at a later date. Mr. Tabassi and Mr. Cohen attest that TCE does not have in its records any request to change, modify, or rescind the waivers. (ECF Nos. 79-3 ¶ 6; 79-4 ¶ 20).  Plaintiff stipulated to the admission of Defendants' requests for admissions that Plaintiff signed the PS Plan waivers and that no other document exists in which the waivers were declared null and void, without legal effect, or unenforceable for any other reason.  (ECF No. 66 ¶ 2; *see also* ECF No. 79-2, at 9).  Plaintiff, on the other hand, attests that he negotiated with Mr. Cohen to reduce his salary in exchange for joining the MP Plan, applied to Mr. Cohen for

membership in May 1990, and joined the MP Plan on June 1, 1990. (ECF No. 87-1 ¶¶ 6, 7, 10).[2]

In or around January 2019, at the time of his resignation, Plaintiff requested that TCE provide him an election form to receive the PS Plan profit-sharing benefit and pension benefit. (ECF No. 79-4 ¶ 21). On behalf of TCE, as the plan administrator, Mr. Tabassi did not provide Plaintiff with an election form to receive the profit-sharing benefit and pension benefit. (*Id.* ¶ 22). Mr. Tabassi communicated to Plaintiff that the profit-sharing benefit and pension benefit was an employer contribution benefit made to eligible employees and Mr. Tabassi had investigated Plaintiff's claim for benefits and determined that the waivers did not allow him to receive either benefit. (*Id.*).

Plaintiff filed an eight-count complaint on July 21, 2021, (ECF No. 1), amended complaint on December 8, 2021, (ECF No. 25), and second amended complaint on December 28, 2021 (the "Second Amended Complaint"), (ECF No. 32). Defendants and Mr. Cohen moved to dismiss the Second Amended Complaint on January 28, 2022. (ECF Nos. 33; 34). Plaintiff filed motions for leave to file a surreply to Defendants' and Mr. Cohen's motions to dismiss on April 29,

---

[2] This declaration was provided quite late in this litigation—attached to Plaintiff's reply to Defendants' opposition to his request to file a surresponse. This portion of the declaration, however, tracks the allegations in the Second Amended Complaint. Thus, it has always been apparent that Plaintiff could produce evidence of this alleged agreement between himself and Mr. Cohen.

2022, (ECF Nos. 44; 45), and a motion for leave to file a surreply and for an extension to file a reply to his first motion for leave to file a surreply on July 12, 2022, (ECF No. 47). The undersigned granted Mr. Cohen's motion to dismiss, dismissed six of the eight counts in the Second Amended Complaint, dismissed Mr. Tabassi and Ms. Abooali from one of the remaining counts, and denied Plaintiff's motions to file surreplies and motion to extend time. (ECF No. 51).

The remaining two counts include a claim against TCE, the PS Plan, the Trustees of the Plan, Mr. Tabassi, and Ms. Abooali for failure to distribute benefits from the PS Plan ("Count One"), (ECF Nos. 32, at 10-12; 52, at 10-14), and a claim against TCE for violating ERISA by not providing requested and required documents to Plaintiff, or providing them after their due dates ("Count Four"), (ECF No. 32, at 21-24; 52, at 15-16).

The original deadline for dispositive motions was June 5, 2023. (ECF No. 64). On May 8, 2023, Defendants filed a joint motion for extension of time. (ECF No. 68). On May 30, 2023, Defendants filed a stipulation agreeing that the deadline for Plaintiff to file his motion for summary judgment should be extended to June 30, 2023. (ECF No. 72). The court approved the new briefing schedule. (ECF No. 73). Plaintiff, however, did not file a motion for summary judgment by June 30, 2023. On July 9, 2023, Plaintiff filed a motion for leave to file a motion to extend

the time to file his motion for partial summary judgment. (ECF No. 74). He then filed the motion for extension of time on July 10, 2023, requesting that this court extend his deadline to July 14, 2023, (ECF No. 75, at 4), which Defendants opposed, (ECF No. 76). Plaintiff filed his motion for partial summary judgment on July 15, 2023. (ECF No. 77).

Defendants filed an opposition to Plaintiff's motion for partial summary judgment and cross-motion for summary judgment on July 28, 2023. (ECF No. 79). Plaintiff filed an opposition to Defendants' cross motion for summary judgment and a reply to Defendants' opposition to his motion for partial summary judgment on August 21, 2023. (ECF No. 80). After Defendants filed a reply to Plaintiff's opposition to their cross motion for summary judgment, (ECF No. 81), Plaintiff filed an unopposed motion for extension of time to file his motion for leave to file a surresponse, (ECF No. 82). The court granted the motion, providing Plaintiff until October 13, 2023 to file his motion for leave to file a surreply. (ECF No. 83). On October 13, 2023, Plaintiff filed a motion for leave to file a surresponse, (ECF No. 84), which Defendants opposed, (ECF No. 85). On November 11, 2023, Plaintiff filed a motion to extend the time to file his response to Defendants' opposition to his motion for leave to file a surresponse to November 22, 2023. (ECF No. 86). On November 24,

2023, Plaintiff filed a reply memorandum in support of his motion for leave to file a surresponse.  (ECF No. 87).

## II.  Standard of Review

Plaintiff has moved for partial summary judgment and Defendants have filed a cross motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).  In determining whether a moving party has made that showing, a court must consider the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Where, as here, cross-motions for summary judgment have been filed, a court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Bollech v. Charles Cnty.*, 69 F.App'x 178, 180 (4th Cir. 2003) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir. 1987)).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is

a genuine issue for trial." *Interprofession du Gruyere v. U.S. Dairy Exp. Council*, 61 F.4th 407, 415 (4th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment[.]" *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).

## III. Analysis

### A. Plaintiff's Motions to (1) Allow Him to File a Motion to Extend Time and (2) Extend Time to File a Motion for Partial Summary Judgment

Plaintiff filed a motion for leave to file a motion to extend the time for him to file a motion for partial summary judgment, (ECF No. 74), and a corresponding motion to extend time, (ECF No. 75). His motion for partial summary judgment was due on June 30, 2023, (ECF No. 73), but he filed the motion for leave to file a motion to extend time on July 9, 2023, and filed the corresponding motion to extend time on July 10, 2023, (ECF Nos. 74; 75). Because the motion to extend time was filed after the deadline passed, Plaintiff's motions will be reviewed pursuant to Rule 6(b)(1)(B). Plaintiff's motions will also be reviewed pursuant to Rule 16(b) because a motion to extend time, although not labeled as such, is in effect a motion to amend the scheduling

order.  *See Metts v. Airtran Airways, Inc.*, No. 10-cv-0466-DKC, 2010 WL 4183020, at *4 (D.Md. Oct. 22, 2010).

Rule 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Rule 16(b)(4) allows a scheduling order to be modified "only for good cause and with the judge's consent."  "Other courts in this Circuit have held that '[t]he good cause modification provision specific to Rule 16(b)(4) takes precedence over the generally applicable extension provisions of Rule 6(b)(1).'"  *Everhart v. Washington Metro. Area Transit Auth.*, No. 11-cv-2155-DKC, 2012 WL 6136732, at *2 (D.Md. Dec. 10, 2012) (quoting *Richardson v. United States*, No. 5:08-cv-620-D, 2010 WL 3855193, at *3 (E.D.N.C. Sept. 30, 2010)); *but see Metts*, 2010 WL 4183020, at *7 (noting that the Rule 6 excusable neglect standard "is a higher burden to satisfy" than is the Rule 16 good cause standard).

In interpreting the meaning of the term "excusable neglect," the United States Court of Appeals for the Fourth Circuit has "defined 'neglect' as encompassing 'late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control[,]'" and "defined 'excusable' as 'at bottom an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission.'"

*Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996).  The relevant circumstances include:

> the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).  In contrast, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'"  *Thompson,* 76 F.3d at 533 (quoting *Pioneer*, 507 U.S. at 392).

Fed.R.Civ.P. 16(b) governs the modification of a scheduling order and requires that the moving party demonstrate good cause for a modification.  "Good cause" under Rule 16(b)(4) is established when the moving party shows that it cannot meet the deadlines in the scheduling order despite diligent efforts. *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.,* 190 F.R.D. 372, 375 (D.Md. 1999) (quoting *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.,* 986 F.Supp. 959, 980 (D.S.C. 1997), *aff'd by unpublished opinion,* 129 F.3d 116 (4th Cir. 1997)).

Plaintiff argues that he missed the June 30, 2023 deadline because his counsel did not receive deposition transcripts until June 15, 2023, and he realized late on the evening of June 30, 2023 that he could not finish the motion for partial summary

judgment that night.  (ECF No. 75-2, at 2).  Plaintiff maintains that his counsel could not contact Defendants' counsel to discuss extending the deadline because it was after business hours.  (*Id.*).  Plaintiff asserts that his counsel called Defendants' counsel on July 5, 2023—the next business day after the long weekend—to request a joint motion to extend the filing dates, and Defendants' counsel told him Defendants would oppose an extension.  (*Id.*).

Here, the equities point in both directions.  First, the delay minimally prejudiced Defendants by forcing them to "spend time responding to briefing that should be unnecessary[.]" (ECF No. 76, at 4-5).  Second, Plaintiff's nine-day delay in filing the motion for leave to file his motion for partial summary judgment, (ECF No. 74), and fifteen-day delay in filing the motion itself, (ECF No. 77), are similar in length to delays courts have found significant.  *See, e.g.*, *Agnew v. United Leasing Corp.*, 680 F.App'x 149, 155 (4th Cir. 2017) (finding a twelve-day delay weighed against finding excusable neglect).  Here, however, the delays have not had an undue "impact on judicial proceedings." *Thompson*, 76 F.3d at 533 (quoting *Pioneer*, 507 U.S. at 395).  Third, the reason for the delay—that Plaintiff's counsel only had fifteen days to review deposition transcripts while writing the motion—is far from ideal but rises above the level of "run-of-the-mill inattentiveness" that often leads courts to decline to find excusable neglect.  *See, e.g.*, *Symbionics Inc. v. Ortlieb*, 432 F.App'x 216, 220 (4th Cir.

2011) (finding plaintiff's counsel's "computer calendaring error" did not constitute excusable neglect as "run-of-the-mill inattentiveness"). Fourth, there is no evidence that Plaintiff engaged in bad faith.

Plaintiff has also established "good cause" for a modification to the scheduling order under Rule 16 because he has shown "diligent efforts" to meet his deadline. *Potomac*, 190 F.R.D. at 375 (quoting *Dilmar*, 986 F.Supp. at 980). Upon realizing after business hours that he could not finish the motion in time, Plaintiff's counsel contacted opposing counsel on the next business day and filed the motion for leave to file a motion to extend time four days later.

Furthermore, because Defendants raise the same issues in their motion for summary judgment as does Plaintiff in his motion for partial summary judgment, there is no utility in striking Plaintiff's partial motion for untimeliness. Accordingly, Plaintiff's motion for leave to file a motion to extend time and his corresponding motion to extend time to file his motion for partial summary judgment will be granted.

### B. Plaintiff's Motion for Leave to File a Surresponse to Defendants' Reply in Support of Their Cross-Motion for Summary Judgment

After the motions for summary judgment were fully briefed, Plaintiff filed a motion for leave to file a surresponse to

Defendants' reply in support of their cross-motion for summary
judgment. (ECF No. 84).

Judge Hollander laid out the standard for when surreply is
permitted in *Cordish Companies v. Affiliated FM Insurance Company*:

> Local Rule 105.2(a) provides that a party is
> not permitted to file a surreply without
> permission of the court. The filing of a
> surreply "is within the Court's discretion,
> *see* Local Rule 105.2(a), but they are
> generally disfavored." *EEOC v. Freeman*, 961
> F.Supp.2d 783, 801 (D.Md. 2013), *aff'd in
> part*, 778 F.3d 463 (4th Cir. 2015); *see also,
> e.g.*, *Chubb & Son v. C & C Complete Servs.,
> LLC*, 919 F.Supp.2d 666, 679 (D.Md. 2013). A
> surreply is ordinarily permitted when the
> party seeking to file the surreply "would be
> unable to contest matters presented to the
> court for the first time" in the opposing
> party's reply. *Clear Channel Outdoor, Inc. v.
> Mayor & City Council of Baltimore*, 22
> F.Supp.3d 519, 529 (D.Md. 2014) (quotations
> and citations omitted). Conversely, a
> surreply is usually not permitted if the
> content is merely responsive to an issue
> raised in the opposition. *See Khoury v.
> Meserve*, 268 F.Supp.2d 600, 605-06 (D.Md.
> 2003).

*Cordish Cos., Inc. v. Affiliated FM Ins. Co.*, 573 F.Supp.3d 977,
988-89 (D.Md. 2021), *aff'd*, No. 21-2055, 2022 WL 1114373 (4th Cir.
Apr. 14, 2022).

Plaintiff argues that Defendants' reply contains "new
arguments and claims," namely that (1) "[t]he issue in this case
is not whether the waivers are irrevocable"; and (2) "Plaintiff
asserts for the very first time that Count Four also includes a

14

claim for breach of the fiduciary duty to follow the plan document[.]"  (*Id.* at 2).

With respect to the first purported new argument—that "[t]he issue in this case is not whether the waivers are irrevocable"— Plaintiff leaves out the full sentence, which reads:  "The issue in this case is not whether the waivers are irrevocable, but whether Plaintiff revoked his admittedly executed waivers."  (ECF No. 81, at 7).  This issue is not new.  In their cross-motion for summary judgment, Defendants argued that there is no evidence Plaintiff revoked the waivers.  (ECF No. 79-1, at 18).

With respect to the second purported new argument—that "Plaintiff asserts for the very first time that Count Four also includes a claim for breach of the fiduciary duty to follow the plan document"—Defendant was simply responding to Plaintiff's argument in his response in support of his motion for partial summary judgment that Count Four includes a claim for breach of fiduciary duty.  (ECF No. 81, at 8) (citing ECF No. 80, at 9-13).  Defendants countered that Plaintiff did not include a claim for breach of fiduciary duty under Count Four in the Second Amended Complaint.  (ECF No. 81, at 8).  This response is not a new argument.

Accordingly, the motion to file a surresponse will be denied.[3]

_____

[3] The only declaration Plaintiff has filed in support of his motion for partial summary judgment was attached to his reply in

## C. Plaintiff's Motion to Extend Time to File a Response to Defendants' Opposition to His Motion for Leave to File a Surresponse

Plaintiff filed an unopposed motion to extend the time to file a response to Defendants' opposition to his motion for leave to file a surresponse. (ECF No. 86). Defendants filed and served their opposition on October 18, 2023. (ECF No. 85). Local Rule 105(2)(a) requires parties to file a response within 14 days after service of the opposition. Thus, the deadline for Plaintiff to respond was November 1, 2023. He did not file his motion to extend time until November 2, 2023. (ECF No. 86). Because the motion to extend time was filed after the deadline passed, the court would ordinarily review Plaintiff's motion under the Rule 6(b) "excusable neglect" standard. Because the court will deny Plaintiff's motion for leave to file a surresponse, however, Plaintiff's motion to extend time will be denied as moot. *See, e.g.*, *Davis v. Kendall*, No. 21-cv-2593-TJS, 2022 WL 17668747, at *1 n.2, *2 (D.Md. Dec. 14, 2022).

### D. Summary Judgment

Plaintiff seeks summary judgment on the issues of whether (1) Plaintiff is a participant in the PS Plan and ESOP; and (2) TCE's delays in distributing documents to him violated the terms of

---

support of his motion for leave to file a surresponse. (ECF No. 87-1). Although the motion for leave to file a surresponse will be denied, the declaration will be considered in the overall summary judgment analysis.

section 12.01(b)(v) of the PS Plan Prototype Document, section 11.4(k) of the ESOP document, and section 104(b) of ERISA, 26 U.S.C. section 1024(b).  (ECF No. 77, at 1).  Defendants seek summary judgment as to both remaining claims.  (ECF No. 79, at 1).

### 1. Admissibility of Plaintiff's Exhibits

Before deciding whether summary judgment is appropriate for either party, the court will address Defendants' contention that the documents Plaintiff attached to his motion for partial summary judgment, (ECF No. 77), and joint opposition to Defendants' cross-motion for summary judgment and reply, (ECF No. 80), cannot be considered.  (ECF Nos. 79-1, at 31-33; 81, at 5-7).

Plaintiff attached to his motion for partial summary judgment what purport to be:  an ESOP summary plan description, (ECF No. 77-1, at 3-25); a PS Plan summary plan description, (*id.* at 26-41); a PS Plan adoption agreement, (*id.* at 42-79); an ESOP summary annual report ("SAR") (*id.* at 80-81); a PS Plan SAR, (*id.* at 82-83); Form 5500 SFs for 2016 and 2017, (*id.* at 84-100); a signed waiver of the right to participate in the Pension Plan, (*id.* at 101-03); and annual benefit statements from the plans displaying his MP Plan balances between 1991 and 2014 and PS Plan balances between 1994 and 2018, (ECF Nos. 77-2; 77-3; 77-4).  Plaintiff included no declaration or affidavit to authenticate the documents.

Defendants argue that the court should disregard Plaintiff's documents or strike them from the record because "Plaintiff purported to submit exhibits into the record without a Rule 56 affidavit, *at all*, to authenticate their contents." (ECF No. 79-1, at 32).

Plaintiff attached to his opposition to Defendants' cross-motion for summary judgment and reply what purport to be: Plaintiff's responses to Defendants' request for production of documents, (ECF No. 80-1, at 1-5); his contribution shortfall analysis, (*id.* at 6-8); annual benefit statements from the plans displaying Plaintiff's balance, (*id.* at 9-82); paystubs showing an hourly rate of $23.50 per hour before Plaintiff allegedly joined the Pension Plan and $22.00 per hour after Plaintiff allegedly joined the Pension Plan, (*id.* at 83); a handwritten note written by Mr. Cohen to a TCE accountant on June 29, 1990 stating that Plaintiff was joining the "pension plan," (*id.* at 84; *see also* ECF No. 80, at 3); paystubs before and after Plaintiff's alleged first 401(k) contribution, (ECF No. 80-1, at 85-86); emails and letters from Plaintiff's counsel to Defendants' counsel requesting plan documents, (ECF Nos. 80-2; 80-3; 80-4); and Plaintiff's answers to Defendants' first set of interrogatories, (ECF No. 80-5). Plaintiff again failed to include an affidavit or declaration authenticating the documents.

Defendants argue that Plaintiff should be precluded from relying on the documents because Plaintiff does not include a declaration as to why they are admissible and they "were not produced before the close of discovery – and some not produced **at all** prior to the Opposition[.]"  (ECF No. 81, at 5-6).

Plaintiff attached a declaration by his counsel to his reply in support of his motion for leave to file a surresponse a declaration.  (ECF No. 87-2).  It states that his counsel makes the declaration "in support of Plaintiff's Motion for Partial Summary Judgment; to affirm the statements in [] Plaintiff's prior pleadings; and to refute some of the incorrect statements made in the Declarations of Mahmoud (Michael) R. Tabassi and Zivan Cohen." (*Id.* ¶ 3) (citing ECF Nos. 79-3; 79-4).  Plaintiff's counsel does not explain which statements he intends to affirm, or which of Mr. Tabassi's or Mr. Cohen's statements he believes to be incorrect.

Defendants cite *Miskin v. Baxter Healthcare Corporation*, 107 F.Supp.2d 669, 671 (D.Md. 1999), *aff'd*, 213 F.3d 632 (4th Cir. 2000), for the proposition that "unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." (ECF No. 81, at 5).  *Miskin*, however, employs the old admissibility standard that the 2010 amendment to Rule 56 superseded.  *Ridgell v. Astrue*, No. 10-cv-3280-DKC, 2012 WL 707008, at *9 (D.Md. Mar. 2, 2012) (quoting *Foreword Mag., Inc. v. OverDrive, Inc.,* No. 1:10-cv-1144-JGS, 2011 WL 5169384, at *2 (W.D.Mich. Oct. 31, 2011))

19

("The new rule eliminated the 'unequivocal requirement that documents submitted in support of a summary judgment motion must be authenticated.'").

Under the current version of Rule 56, "facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Wake v. Nat'l R.R. Passenger, Corp.*, No. 12-cv-1510-PWG, 2013 WL 5423978, at *1 (D.Md. Sept. 26, 2013) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.,* No. 11-cv-3415-DKC, 2013 WL 2919705, at *1 n.1 (D.Md. June 12, 2013) ("Importantly, the objection [now] contemplated by the amended Rule is not that the material has not been submitted in admissible form, but that it cannot be.") (internal quotation marks omitted)).

The revised Rule 56 provides a procedure by which courts must review objections to the admissibility of evidence at the summary judgment stage. A party may support a motion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A). The other "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in

20

evidence." Fed.R.Civ.P. 56(c)(2).  The comments to the 2010 Rule provide that the "burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed.R.Civ.P. 56 advisory committee's note to 2010 amendment.  The comments also indicate that "the court may afford an opportunity [to the proponent] to properly support or address" the opponent's objection.  *Id.*

Here, Defendants object specifically to the admissibility of the handwritten note.  (ECF No. 81).  They also object broadly to the admissibility of the other documents Plaintiff proffered in both his motion for partial summary judgment and joint opposition to Defendants' cross-motion for summary judgment and reply.  (ECF No. 79-1, at 32) ("[T]his Court should therefore disregard Plaintiff's exhibits and unauthenticated facts completely or in the alternative, strike them from the record."); (ECF No. 81, at 5-6) ("Plaintiff should be precluded from relying on the documents to oppose summary judgment.").  Although Plaintiff could have addressed Defendants' opposition to the authenticity of his exhibits, he did not do so in his reply or any of his subsequent motions.  (ECF Nos. 80; 82; 84; 86; 87).

It is possible that Plaintiff may be able to provide admissible versions of many of his documents at trial.  The summary plan descriptions, adoption agreement, SARs, Form 5500 SFs, annual benefit statements, and paystubs could, for example,

21

"be admissible if they were accompanied by an affidavit from the custodian of the records to authenticate the records and establish that they were kept in the course of regular business." *Jones v. W. Tidewater Reg'l Jail*, 187 F.Supp.3d 648, 654 (E.D.Va. 2016) (citing Fed.R.Evid. 803(6)). Plaintiff's counsel will be able to authenticate the emails and letter he sent to Defendants' counsel by testifying as to his personal knowledge of writing them. Fed.R.Evid. 901(b)(1). Plaintiff can testify as to how he created his contribution shortfall analysis. *Id.* Plaintiff's counsel can authenticate Plaintiff's responses to Defendants' request for production of documents because the "declaration of an attorney is sufficient to authenticate . . . discovery documents, such as answers to deposition questions, interrogatories or requests for admissions." *Deakins v. Pack*, 957 F.Supp.2d 703, 754 (S.D.W.Va. 2013) (quoting *Hess v. Multnomah Cnty.,* 211 F.R.D. 403, 406 (D.Or. 2001)). Plaintiff's answers to Defendants' first set of interrogatories are admissible because district courts are "free to consider the answers to interrogatories in determining whether summary judgment [is] proper." *Keziah v. W.M. Brown & Son, Inc.*, 888 F.2d 322, 326 (4th Cir. 1989) (citing Fed.R.Civ.P. 56). Finally, the court will consider the waiver Plaintiff attached because Defendants included the same document (along with the second waiver) in their cross-motion. (ECF Nos. 77-1, at 101; 79-9, at 2-3); *see also Ridgell*, 2012 WL 707008, at *10 ("Where

[Plaintiff] relies on Defendant's exhibits . . . she has likely waived her hearsay objection to those particular exhibits.").

Plaintiff has not demonstrated, however, that he could authenticate the handwritten note.  Although he could testify to how he received it, he cannot authenticate the note's contents as he does not purport to have written it.  *See Whittaker v. Morgan State Univ.*, No. 09-3135-JKB, 2012 WL 4356798, at *4 (D.Md. Sept. 21, 2012), *aff'd*, 524 F.App'x 58 (4th Cir. 2013).  Additionally, Defendants vehemently object to the note's veracity, pointing out that Mr. Cohen's signature on the executed waivers looks "very different" from his purported signature in the note.  (ECF No. 81, at 7) (citing ECF Nos. 79-7, at 2-3; 80-1, at 84).  Consequently, the note will be stricken, and the court will consider the other exhibits Plaintiff attached to his motions.

### 2. Failure to Distribute Benefits from PS Plan

In Count One of the Second Amended Complaint, Plaintiff alleges that Defendants failed to provide a distribution election form when Plaintiff requested it and failed to distribute benefits from the PS Plan.  (ECF No. 32, at 10-12).  He seeks $571,209.67, plus applicable investment gains from May 31, 2018 to the date of the distribution of the benefits.  (*Id.* at 12).

Plaintiff contends that he is a participant in the PS Plan and ESOP because he fits the eligibility requirements and received annual benefit statements of his account values for years.  (ECF

No. 77-5, at 1-3).  He concedes that he signed the waivers but argues that they are revocable because they allowed him to enter into the plans "at some future date." (*Id.* at 3).  He asserts that he has relied on the annual benefit statements from the MP and PS Plans as evidence of his retirement benefits under those plans for 25 years. (*Id.* at 6).  Finally, he maintains that the doctrine of laches should bar Defendants' attempt to "retroactively negate the 1990 determination that Plaintiff became a Participant in the MP Plan and the 1993 determination that Plaintiff became a Participant in the PS Plan" because (1) there was a delay of more than 25 years before Defendants claimed Plaintiff was not a participant; (2) the delay was unreasonable because Defendants possessed all the factual information about Plaintiff's participation in the Plans; and (3) the delay will prejudice Plaintiff because his retirement benefits will be reduced, evidence favorable to him may have been lost or destroyed, and witnesses favorable to him may be losing their memory. (*Id.* at 6).  He consistently contends, as alleged in the Second Amended Complaint, that he became a participant in the Pension Plan for the year beginning on June 1, 1990. (ECF No. 80, at 3).

Defendants assert that they should be granted summary judgment on Count One because (1) Plaintiff's plan waivers are valid and enforceable because their terms expressly allow participants to waive their rights to benefits, and Plaintiff

expressly waived his rights for the purpose of receiving a higher salary; (2) Plaintiff admits that he executed the waivers; (3) Plaintiff cannot establish an abuse of discretion in the denial of his claim; and (4) Plaintiff failed to produce discovery to contradict the waivers. (ECF No. 79-1, at 22-27).

Plaintiff replies that he was a participant in the MP Plan and is a participant in the PS Plan because (1) he received a reduced salary upon joining the MP Plan; (2) he received MP Plan annual benefit statements between June 1, 1990 and June 1, 2013, and PS Plan annual benefit statements between June 1, 1993 and June 1, 2017; (3) the MP Plan does not mention an "irrevocable waiver"; (4) the waivers he signed do not contain the word "irrevocably"; and (5) he was a participant in the MP Plan when it was amended and reinstated on May 31, 1993, so he should continue to participate under the terms of the new MP Plan. (ECF No. 80, at 3-6). He argues that Defendants abused their discretion by attempting retroactively to remove Plaintiff from the MP Plan as of June 1, 1990 by using a document that was effective in 1993, and from the PS Plan as of June 1, 1993 by using a document that was effective in 2013. (*Id.* at 4, 6). He also contends that a later version of the adoption agreement restricts the election not to participate to the 401(k) part of the Plan, to which Plaintiff was already contributing. (*Id.* at 6-7).

Defendants counter that Plaintiff (1) has not explained why a reduction in salary indicates his waiver was revoked; (2) has not authenticated the note purportedly written by Mr. Cohen; and (3) does not dispute that the annual benefit statements were created in error by the accounting firm. (*Id.* at 6-7).

ERISA defines "participant" as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(2)(C)(7).  A plaintiff has the burden to prove that he is a participant eligible to receive a benefit from an ERISA plan.  *McKeldin v. Reliance Standard Life Ins. Co.*, 254 F.App'x 964, 968 (4th Cir. 2007).  The United States Supreme Court has clarified that to fall under the definition of "participant," a former employee must have "a reasonable expectation of returning to covered employment" or "'a colorable claim' to vested benefits." *Firestone*, 489 U.S. at 117 (quoting *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986), *abrogated on other grounds by Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995)).  Likewise, a plaintiff claiming that he may become eligible to receive a benefit "must have a colorable claim that (1) he or she will prevail in a suit

for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id.* at 117-18.

If the plan grants the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan[,]" *id.* at 115, the plaintiff must show the administrator or fiduciary abused that discretion, *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000). The administrator's decision will not be disturbed "if it is reasonable." *Booth*, 201 F.3d at 342. The Fourth Circuit has identified several factors to consider when determining whether the administrator's exercise of discretion is reasonable:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342-43.

Here, Defendants have established that Plaintiff initially waived his rights to receive MP Plan and PS Plan benefits. By not responding within 30 days of service to Defendants' request for admission, Plaintiff admitted that he signed waivers relinquishing

his rights to receive MP Plan and PS Plan benefits.   (ECF Nos. 66, at 1; 77-5, at 3; 79-2, at 9); Fed.R.Civ.P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.").

In Maryland, a "waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances." *BarGale Indus., Inc. v. Robert Realty Co.*, 275 Md. 638, 643 (1975).   "(I)t is elementary that either party to a contract may waive any of the provisions made for his benefit."   *Id.* (quoting *Twining v. Nat'l Mortgage Corp.*, 268 Md. 549, 555 (1973)).   Employees may knowingly and voluntarily waive rights to ERISA benefits.   *Auslander v. Helfand*, 988 F.Supp. 576, 580 (D.Md. 1997) (citing *Dist. 29, United Mine Workers of Am. v. New River Co.*, 842 F.2d 734, 737 (4th Cir. 1988); *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 181 (1st Cir. 1995) (citing cases); *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 587 (1st Cir. 1993) ("ERISA does not prohibit knowing and voluntary relinquishment of employee benefits."); *Finz,* 957 F.2d at 82-83; *Lumpkin v. Envirodyne Indus., Inc.,* 933 F.2d 449, 455-56 (7th Cir. 1991) (holding anti-alienation provisions do not preclude waiver of benefits in settlement

agreement); *Leavitt v. NW. Bell Tel. Co.,* 921 F.2d 160, 162 (8th Cir. 1990) (holding that ERISA does not preclude releases of breach of fiduciary duty claims)).  On Plaintiff's waivers, he wrote, "I choose to get higher salary[,]" indicating that he intended to give up the benefits in exchange for higher pay.  (ECF No. 79-9, at 2, 3).  There is no evidence that his waivers were not knowing and voluntary.  Thus, Plaintiff has no right to receive PS Plan benefits unless he revoked the waivers by applying for and being accepted as a participant.

The text of the plan and waivers appear to conflict on whether the waivers are revocable.  The plan provides that "[a]n Employee may irrevocably elect not to participate in the Plan[,]" (ECF No. 79-6, at 6), but the waivers provide that "should I apply and be accepted for membership in the Plan at some future date . . . , no benefits . . . will accrue to me on account of any service rendered prior to the approval of such application[,]" (ECF No. 79-9, at 2, 3).  Thus, the waivers allow for the possibility of revocation in the form of a future application for membership in the plan.  The Fourth Circuit has held that "any ambiguity in an ERISA plan 'is construed against the drafter of the plan, and it is construed in accordance with the reasonable expectations of the insured.'" *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 165 (4th Cir. 2013) (quoting *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 269 (4th Cir. 2002), *as amended* (Oct. 24, 2002)

(citation and internal quotation marks omitted)).  To the extent that a conflict between the plan itself and a later waiver of rights under the plan may create ambiguity in the plan, the ambiguity would be resolved in favor of Plaintiff.

The evidence also conflicts as to whether Plaintiff joined the plans later via discussions with Mr. Cohen.  As the handwritten note has been struck, the only documents Plaintiff has produced that may be admissible at trial to establish he is a participant in the PS Plan are the annual benefit statements he purports to have received over the years, paystubs showing he received a lower salary after purportedly joining the MP Plan, paystubs before and after his purported first 401(k) contribution, and Plaintiff's declaration attached to his reply memorandum in support of his motion for leave to file a surresponse.  (ECF Nos. 77-2; 77-3; 77-4; 80-1, at 3; 9-82; 85-86; 87-1).  Plaintiff attests in his declaration that he negotiated with Mr. Cohen to reduce his salary in exchange for joining the MP Plan, applied to Mr. Cohen for membership in May 1990, and joined the MP Plan on June 1, 1990.  (ECF No. 87-1 ¶¶ 6, 7, 10).  He provides no documents evidencing a written application to the plan.  The MP Plan, however, does not require that an application be in writing.  (ECF No. 79-8, at 27) ("In order to become a Participant hereunder, each Eligible Employee shall make application to the Employer for participation in the Plan and agree to the terms hereof.  Upon the acceptance of

any benefits under this Plan, such Employee shall automatically be deemed to have made application and shall be bound by the terms and conditions of the Plan and all amendments hereto.").   Thus, although Plaintiff executed waivers of his rights to receive MP Plan and PS Plan benefits, he has "a colorable claim" to vested benefits.  *Firestone*, 489 U.S. at 117.  Consequently, a material dispute exists as to whether Plaintiff applied to the MP Plan and became a participant.

Considering the facts in the light most favorable to Plaintiff, a reasonable jury could determine that Plaintiff was a participant in the MP Plan (which merged into the PS Plan). Conversely, considering the facts in the light most favorable to Defendants, a reasonable jury could also determine that Plaintiff was not a participant in the MP Plan or PS Plan.   Accordingly, both Plaintiff's motion for partial summary judgment and Defendants' motion for summary judgment with respect to Count One will be denied.

### 3. Whether Defendants' Delays in Delivering Documents to Plaintiff Violated ERISA

In Count Four of the Second Amended Complaint, Plaintiff alleges that Defendants violated ERISA by not providing requested and required documents to Plaintiff or providing them after their due dates.  (ECF No. 32, at 21).  He requests a total of $394,900

in penalties for various alleged delays and failures to deliver documents. (*Id.* at 24).

Plaintiff contends that Defendants violated section 1024(b)(3) of ERISA because Plaintiff received the PS Plan and ESOP SARs for the 2016-2017 fiscal year on April 17, 2019, but ERISA required Defendants to provide them by May 15, 2018, effectuating a 337-day delay. (*Id.* at 4). Plaintiff also asserts there is no evidence that TCE ever distributed the SARs for the 2017-2018, 2018-2019, and 2019-2020 fiscal years. (*Id.*). Finally, Plaintiff argues that even if he is not deemed to be a participant of the PS Plan, he is a participant of the ESOP, and therefore, Defendants violated ERISA by delaying their distribution of the ESOP SARs. (*Id.* at 5).

Defendants contend that they should be granted summary judgment on Count Four because (1) Plaintiff's claims are time-barred under Maryland Code, Courts & Judicial Proceeding § 5-107, which is the most analogous statute to ERISA § 502(c), and provides for a one-year statute of limitations; (2) Plaintiff failed to meet his burden of proof by not producing any discovery supporting his claims; and (3) the evidence shows TCE met its obligations as plan administrator because Mr. Tabassi authorized Defendants' counsel to respond to Plaintiff's April 8, 2019 request for documents on April 17, 2019, and nine days is timely under § 1132(c)(1). (ECF No. 79-1, at 28-30).

In his opposition, Plaintiff reiterates many of his arguments from his motion for partial summary judgment.  He adds that Defendants failed to distribute the SARs for the 2020-2021 and 2021-2022 fiscal years.  (ECF No. 80, at 8).  Plaintiff also asserts that Defendants used the incorrect statute of limitations when they argued that the SAR part of Count Four is time barred.  (*Id.* at 10).  He maintains that section 413 of ERISA, codified at 29 U.S.C. section 1113, provides the statute of limitations in this case because Defendants' failure to timely distribute the SARs constituted a breach of their fiduciary duties.  (*Id.* at 11) (citing 29 U.S.C. § 1113).  Section 413 provides for statutes of limitations "six years after (A) the date of the last action which constituted a part of the breach . . . , or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach" or "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  (*Id.*) (quoting 29 U.S.C. § 1113).  Plaintiff contends that he gained "actual knowledge" about the violations of the SAR distribution rules in March 2019 when his counsel began working on the April 8, 2019 letter to Mr. Tabassi.  (*Id.*).  Because March 2019 is less than three years before the complaint was filed, Plaintiff argues that the statute of limitations does not bar his SAR claims.

Plaintiff also asserts that the three-year statute of limitations under section 114 of ERISA applies to his claim that

Defendants failed to provide the documents when Plaintiff requested them, because such a failure constituted a breach of their fiduciary duties. (*Id.* at 12). Plaintiff argues that all of his "requests for documents that were issued after August 1, 2018 generated new causes of action that were within the" statute of limitations because he made many requests for documents within three years of the date that he filed the complaint, and each request "shall be treated as a separate violation." (*Id.* at 13) (quoting 29 U.S.C. § 1132(c)(1)).

In their reply, Defendants assert that Plaintiff did not include any breach of fiduciary claims in the Second Amended Complaint and "made no reference at all to 29 U.S.C. § 1104 or to 29 U.S.C. § 1132(a)(2) (the provision that allows fiduciary breach claims in ERISA cases) in Count Four." (ECF No. 81, at 8). Rather, they insist that Plaintiff brought his claims solely under 29 U.S.C. § 1132(c). (*Id.*). Thus, they maintain that the three-year statute of limitations does not apply. (*Id.*).

ERISA section 1024(b)(3) requires administrators to "furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules . . . and such other material . . . as is necessary to fairly summarize the latest annual report" within 210 days after the close of the fiscal year regardless of whether the participant requests them. Section 1024(b)(4) requires administrators to "furnish a copy of the latest

updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated" upon written request.  Section 1132(c)(1)(B) provides that any administrator who "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable . . . in the amount of up to $100 a day from the date of such failure or refusal."[4]  Thus, the penalty applies only when the participant shows he or she has requested the documents in writing.

Plaintiff alleges in the Second Amended Complaint that he requested in writing from TCE and Mr. Tabassi copies of the 2016-2017 fiscal year PS Plan and ESOP SARs, and he received them 337 days late.  (ECF No. 32 ¶ 88).  He also alleges that the PS Plan and ESOP SARs for the fiscal years 2017-2018, 2018-2019, and 2019-2020 were never provided to him, but he does not argue that he requested the 2017-2020 SARs in writing.  (*Id.* ¶ 89).  Plaintiff asserts that Defendants were obligated to provide the SARs regardless of whether he requested them in writing under section

---

[4] The penalty has been raised to a maximum of $110 per day for violations occurring after July 29, 1997.  29 C.F.R. § 2575.502c-1.

1024(b)(3).  (ECF No. 32 ¶ 86).  Section 1024(b)(3), however, only pertains to "statements and schedules" and "any such other material . . . as is necessary to fairly summarize the latest annual report."  Annual reports themselves fall under section 1024(b)(4).  Thus, Defendants were only obligated to provide the SARs if Plaintiff requested them in writing.

The record reflects that Plaintiff did request the 2016-2017 PS Plan and ESOP SARs in writing.  On April 8, 2019, Plaintiff's counsel wrote a letter to Mr. Tabassi stating that Plaintiff "has not received the PS Plan SAR for the [plan year ending on] May 31, 2017" and "has not received any SAR[]s from the ESOP."  (ECF No. 80-4, at 2).  Defendants' counsel provided Plaintiff's counsel the 2016-2017 PS Plan and ESOP SARs on April 17, 2019.  (ECF Nos. 77-1, at 1, 80-83; 79-10, at 2).  Thus, Plaintiff requested the 2016-2017 PS Plan and ESOP SARs in writing, and Defendants complied with the requests by "mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request[.]"  29 U.S.C. § 1132(c)(1).  Defendants met their obligations with respect to Plaintiff's written requests for the 2016-2017 PS Plan and ESOP SARs.[5]  As a

---

[5] It is immaterial that the court has not determined whether Plaintiff is a participant in the PS Plan.  If Plaintiff is a participant, Defendants met their obligation to provide the PS Plan SAR, and if he is not, Defendants were not required to provide the PS Plan SAR to Plaintiff.  29 U.S.C. § 1024(b)(3).

result, no reasonable jury could conclude that Defendants violated section 1024 of ERISA or the plans by delaying delivery of the 2016-2017 PS Plan and ESOP SARs.

The record also reflects that Plaintiff requested the 2017-2018 and 2018-2019 PS Plan and ESOP SARs in writing. Plaintiff's counsel emailed an attachment to Defendants' counsel on February 12, 2020 requesting the 2017-2018 and 2018-2019 SARs. (ECF No. 80-2, at 4-6). Plaintiff's counsel also followed up via email on February 26, 2020 requesting the 2017-2018 and 2018-2019 SARs. (ECF No. 80-2, at 3). Plaintiff does not, however, include any evidence that he requested the 2019-2020 SARs in writing.[6]  *See, e.g.*, *Latimer v. Washington Gas Light Co.*, No. 1:11-cv-571-GBL, 2012 WL 2087783, at *12 (E.D.Va. June 7, 2012) (granting summary judgment in favor of defendants because plaintiff provided no evidence that her document requests were submitted in writing). Defendants do not identify any evidence that they sent the 2017-2018, 2018-2019, or 2019-2020 SARs by mail to Plaintiff. (ECF No. 79-10, at 2) (sending only the 2016-2017 SARs). Maintaining the documents in TCE's accounting/HR room, (ECF No. 79-10, at 2), is insufficient because section 1132 of ERISA requires the

---

[6] Although Plaintiff also includes the 2020-2021 and 2021-2022 fiscal years in his opposition, (ECF No. 80, at 8), he cannot amend the pleadings at this stage. *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F.Supp.2d 399, 435 (D.Md. 2006) (A "plaintiff may not amend its complaint through arguments at the summary judgment stage.").

administrator to furnish them by mail.  As a result, Defendants have not proven that they met their obligations regarding Plaintiff's written requests for the 2017-2018 and 2018-2019 PS Plan and ESOP SARs.  Defendants are thus entitled to summary judgment only with respect to the 2016-2017 and 2019-2020 PS Plan and ESOP SARs.  Plaintiff, in turn, is entitled to summary judgment with respect to Defendants' failure to deliver the 2017-2018 and 2018-2019 ESOP SARs.  Plaintiff will be granted summary judgment as to liability on this portion of Count Four, but the court will defer imposition of any particular monetary penalty until all claims are resolved.[7]

Contrary to Defendants' assertion, the statute of limitations does not bar Plaintiff's SAR claims.  "Because § 1132 does not contain a statute of limitations, courts must 'borrow the state law limitations period applicable to claims most closely corresponding to the federal cause of action.'"  *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 337 (4th Cir. 2009) (quoting *White,* 488 F.3d at 245).  Several decisions in this district have borrowed the one-year statute of limitations from

_____

[7] Defendants would be wise to mail Plaintiff the 2017-2018 and 2018-2019 ESOP SARs immediately, as well as the PS Plan SARs for the same years in case Plaintiff is determined to be a PS Plan participant.  The court has discretion to award a statutory penalty of up to $110 per day starting on March 13, 2020, 30 days after February 12, 2020, when Plaintiff's counsel requested the 2017-2018 and 2018-2019 SARs in writing.  (ECF No. 80-2, at 4-6); 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1.

§ 5-107 of the Courts and Judicial Proceedings of the Maryland Code. *See, e.g.*, *Knepper v. Volvo Grp. N. Am.*, No. 18-cv-02879-ELH, 2019 WL 4750337, at *19 (D.Md. Sept. 27, 2019); *Wallace v. Freight Drivers & Helpers Loc. Union No. 557 Pension Fund*, No. 1:11-cv-02062-JKB, 2012 WL 1327921, at *4 (D.Md. Apr. 16, 2012); *Corrado v. Life Invs. Owners Participation Tr. & Plan*, No. 08-cv-0015-DKC, 2011 WL 886635, at *11 (D.Md. Mar. 11, 2011); *Cunningham v. Space Telescope Sci. Inst.*, No. 05-cv-1084-WDQ, 2007 WL 9780463, at *5 (D.Md. June 7, 2007).

More recently, however, Judge Hazel conducted a detailed analysis of whether § 5-107 provides the most analogous statute of limitations for a claim under section 1132(c)(1)(B) of ERISA. *Hooker v. Tunnell Gov't Servs., Inc.*, 447 F.Supp.3d 384, 395-98 (D.Md. 2020). He concluded that "the statute of limitations set by § 5-107 is not the 'state law limitations period applicable to claims most closely corresponding to the federal cause of action' at issue here" because § 5-107 applies exclusively to criminal penalties and forfeitures in prosecutions and suits brought by the State of Maryland. *Id.* at 397 (quoting *Pressley*, 553 F.3d at 337); *see also Williams v. Standard Fed. Sav. & Loan Ass'n*, 76 Md.App. 452, 459-60 (1988). Judge Hazel determined that "Maryland recognizes a 'distinction between a statutory penalty to be paid into the government treasury and a statutory private civil remedy,' with attendant consequences for the applicable statute of

limitations." *Hooker*, 447 F.Supp.3d at 396-97 (quoting *Williams*, 76 Md.App. at 462); *see also Master Fin., Inc. v. Crowder*, 409 Md. 51, 72-73 (2009). Thus, "[s]tate enforcement actions for fines and penalties that are subject to a statute of limitations with 'no application' to private suits for private remedies cannot be the closest analogue to actions under § 502(c)(1)(B)." *Id.* at 397. Judge Hazel held that "[c]ivil actions under § 5-101 of the Courts and Judicial Proceedings Article are instead the most similar point of state reference" for 1132(c)(1)(B) claims. *Id.* He cited *Pressley*, in which the Fourth Circuit held that a three-year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture when the action is given to the party aggrieved" applied to § 502(c)(1)(B) claims under South Carolina law because § 502(c)(1)(B) "was clearly intended to encompass more persons than only 'the party aggrieved.'" *Pressley*, 553 F.3d at 339 (quoting S.C. Code. Ann. § 15-3-570). Consequently, section "5-107 cannot be the proper statute of limitations to apply here, given the determination by Maryland courts that it only reaches actions by public authorities." *Hooker*, 447 F.Supp.3d at 397.

This court will follow Judge Hazel's conclusion that the statute of limitations under section 5-101, not section 5-107, is the most analogous to Plaintiff's action here. Section 5-101 provides a three-year limitations period. Accordingly,

Plaintiff's claims arising from conduct that occurred within three years of the filing of the complaint are not time barred.

## IV.  Conclusion

For the foregoing reasons, (1) Plaintiff's motion for leave to file his motion to extend the time to file his motion for partial summary judgment will be granted; (2) Plaintiff's motion for extension of time to file his motion for partial summary judgment will be granted; (3) Plaintiff's motion for partial summary judgment will be granted with respect to Defendants' failure to deliver the 2017-2018 and 2018-2019 ESOP SARs and denied as to all other claims; (4) Defendants' cross-motion for summary judgment will be denied as to Count One, granted as to the 2016-2017 and 2019-2020 PS Plan and ESOP SARs claims in Count Four, and denied as to the 2017-2018 and 2018-2019 PS Plan and ESOP SARs claims in Count Four; (5) Plaintiff's motion for leave to file a surresponse will be denied; and (6) Plaintiff's motion for extension of time to file his response to Defendants' opposition to Plaintiff's motion for leave to file a surresponse will be denied as moot.  A separate order will follow.

/s/

DEBORAH K. CHASANOW
United States District Judge
