IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| YEHUDA NORDMAN | : | |
| | : | |
| v. | : | Civil Action No. DKC 21-1818 |
| | : | |
| TADJER-COHEN-EDELSON ASSOCIATES, INC., et al. | : | |

**MEMORANDUM OPINION**

Plaintiff Yehuda Nordman brought this case pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Defendants Tadjer-Cohen-Edelson Associates, Inc. ("TCE"), Tadjer-Cohen-Edelson Associates, Inc. 401(k) Profit Sharing Plan (the "PS Plan"), Mahmoud "Michael" R. Tabassi ("Mr. Tabassi"), Alireza Tahbaz, Sanjay Khanna, and Soolmaz Abooali ("Ms. Abooali") (collectively, the "Defendants").[1]

**I. Litigation Background**

Plaintiff, a former employee of TCE, alleged in the Second Amended Complaint that Defendants violated the provisions of ERISA in several ways. He sought corrections in his accounts, damages, his proportionate share of payments that he asserted that he should have received, penalties, attorneys' fees and costs, and other equitable relief. In earlier decisions, some of the claims were

---

[1] Defendants Zivan Cohen and the Tadjer-Cohen-Edelson Associates, Inc. Employee Stock Ownership Plan were dismissed September 21, 2022. (*See* ECF Nos. 50, at 6; 51).

dismissed or summary judgment was granted. The remaining two counts include a claim against TCE, the PS Plan, the Trustees of the Plan, Mr. Tabassi, and Ms. Abooali for failure to distribute benefits from the PS Plan ("Count One") and a claim against TCE, Mr. Tabassi, and Ms. Abooali for violating ERISA by not providing requested and required documents to Plaintiff, or providing them after their due dates (a portion of "Count Four").

Despite the large amount of money at issue, Plaintiff, and his current attorney, have taken a lackadaisical approach to litigation obligations. For many months, even years, Plaintiff has missed deadline after deadline, sought belated extensions of time, and then produced mediocre support for his positions. During pretrial preparation, the parties were advised of the schedule and directives in the local rules. The letter-order issued April 18, 2024, set the date for the pretrial conference and reminded the parties that the pretrial submissions should include trial exhibits and stipulations. With regard to exhibits, the parties were told to "advise [the court] of any objections to documents and exhibits in accordance with Local Rule 106.2." That Local Rule requires the pretrial order to include:

> A listing of each document or other exhibit, including summaries of other evidence, other than those expected to be used solely for impeachment, separately identifying those which each party expects to offer and those which each party may offer if the need arises. The listing shall indicate which exhibits the parties agree may be offered in evidence without the usual

2

      authentication.  This requirement may be met by attaching an exhibit list to the pretrial order.

Local Rule 106.3 is entitled: Responsibility for Preparing Pretrial Order.  It provides:

> The plaintiff shall prepare the first draft of the pretrial order covering all matters which the plaintiff proposes to include in the pretrial order.  Unless otherwise ordered by the Court or agreed upon by counsel, the plaintiff shall serve a copy of a draft upon opposing counsel fourteen (14) days before the proposed pretrial order is due to be filed.  Unless otherwise ordered by the Court or agreed upon by counsel, opposing counsel shall serve any proposed revisions and additions upon plaintiff's counsel at least seven (7) days before the order is due to be filed.  If counsel are unable to agree upon any particular provision of the proposed order, counsel for each party shall submit to the judge by the filing date a draft proposal on the provision in dispute.

In a letter-order issued June 20, 2024, counsel were reminded of the procedures and specifically told that Plaintiff was to serve a draft of the proposed pretrial order by October 24, 2024, and that counsel were to exchange exhibits so that the proposed pretrial order included any agreed-upon trial exhibits.  (ECF No. 99).

Despite all of those reminders, Plaintiff never provided any notice of exhibits to Defendants, including as part of his portion of the pretrial order.  (ECF Nos. 109, at 5; 110, at 15–16).  Worried about what might eventually be offered at trial, Defendants moved *in limine* to prohibit the use of any exhibit not provided during discovery.  The pretrial conference was held in a courtroom on the record, but no transcript has been prepared.  The court and

3

counsel discussed the status of exhibits. After confirming that Plaintiff had neither depositions to offer nor experts who would testify, the court ruled that Plaintiff would not be presenting any documents at trial and that the trial would involve only the testimony of Plaintiff, some or all of the Defendants, and Mr. Cohen and exhibits, if introduced by Defendants.[2]

## II. Trial Evidence

The bench trial was held December 16, 2024. Plaintiff called Sanjay Khanna, Mahmoud Tabassi, Zivan Cohen, and himself as witnesses. The Defense examined those witnesses but did not call additional witnesses on its own. Only three defense exhibits were received: the two written waivers Plaintiff executed upon beginning his employment with TCE and a stipulation regarding requests for admission.

---

[2] Barring Plaintiff's use of any documents at trial was consistent with Fed.R.Civ.P. 37(c)(1), which states that when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure is substantially justified or is harmless." The Fourth Circuit has described Rule 37(c)(1) as an "automatic sanction." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003). Plaintiff's failure to provide a list of exhibits before trial violated Rule 26(a)(3)(A)(iii), triggering the Rule 37(c)(1) sanction. The court determined that Plaintiff's failure was neither substantially justified nor harmless because Plaintiff offered no meaningful justification and his use of exhibits at trial would constitute irremediable surprise. *See id.* at 597.

4

Sanjay Khanna has worked at TCE since December of 1996. He became a member or participant in the PS Plan upon employment and receives an account statement annually. He became a Trustee of the Plan in 2018, and his role is to make sure that the money in the Plan is invested and managed properly through third parties. He has no role in determining who is in, or is not in, or eligible to be in, the Plan.

Mahmoud Tabassi, now a managing principal and sole director, has worked at TCE since June 1984. He is a member of the PS Plan and became a member as part of his employment offer. He is also a Trustee of the PS Plan and Plan Administrator, taking on those roles in 2018, when Mr. Cohen stepped down. Prior to that, Mr. Cohen was the Plan Administrator.

After Plaintiff left TCE's employ, the company moved offices and Mr. Tabassi was responsible for unpacking at the new office. He came across the folder with Plaintiff's waivers but found no other document negating the waivers. After discussing the matter with Mr. Cohen and a Mr. Eisenberg (a lawyer), he decided that Plaintiff was not a member of the Plan. Their outside accountant is Gelman, Rosenberg, and Freedman. The company provides the accountants the salary of each employee and the accountants prepare the matrix and the annual statements.

Zivan Cohen, founder and former president of TCE, testified that he discussed participation in the pension plan with Plaintiff

5

when he applied for a position with the company. All new employees, including Mr. Nordman, were offered the opportunity to participate in the PS Plan in return for a slightly reduced salary. Mr. Nordman elected not to participate, and he signed a document, prepared by a lawyer, so indicating. One other employee, an engineer, also elected not to participate. Mr. Cohen said that an employee could change his or her mind, and, to effectuate the change, would first tell him (when he was acting as Plan Administrator) and then, after a discussion of a new salary, they would have to sign new papers showing that the employee was joining the plan. No such discussion took place with Mr. Nordman to Mr. Cohen's recollection.

Account statements were prepared by outside accountants. The bookkeeper in the company sent payroll papers to those accountants, and then would distribute the statements to the employees. He said that it was a mistake for Mr. Nordman to have received any account statements, but he was not aware in the early 1990s that Mr. Nordman was receiving them.

Mr. Nordman testified about his educational and work background leading to his employment at TCE. He was interviewed by Mr. Cohen in November of 1988, and they discussed his salary options: 1) a slightly higher salary but not be a participant in the pension plan, or 2) a slightly lower salary and be a participant in the pension plan. He chose the higher salary,

6

explaining that his wife was in school, and he didn't know if he was going to stay at TCE, so he decided on the higher salary and signed the "note," believing that he could join later. After his wife finished graduate school in May 1990, he went to Mr. Cohen and said he wanted to join the pension plan, and Mr. Cohen said "fine." Mr. Nordman saw Mr. Cohen write something on a piece of paper and gave the paper to Mr. Nordman with a request to take it to the in-house accountant, which he did.[3] According to Mr. Nordman, his salary, which had been $23.50 per hour, was reduced by 10% to $21.50 per hour, reflecting the amount the pension plan was giving at the time. He says that, a year later, he began receiving documents concerning the plan. He said that he "probably" would have left the company if he could not join the plan. After he resigned from TCE many years later, he learned for the first time that he was not in the plan. He confirmed his signature on the waivers, confirmed that he never made a written application to the pension plan (only verbal), and acknowledged that the pension plans are fully funded by the company without employee contribution.

At the conclusion of the bench trial, Plaintiff was granted an opportunity to file a supplemental brief on two issues: (1)

---

[3] Plaintiff attempted to rely on a "note" at the summary judgment stage of the case, but the document was objected to by Defendants. Plaintiff did not attempt to authenticate it in any way and the court ruled that it could not be considered. (ECF No. 88, at 23).

7

whether Plaintiff alleged any claims under equity related to his alleged receipt of plan documents, and (2) issues regarding the statutory penalties for a portion of the claim relating to document requests.

On January 18, 2025, Plaintiff filed a supplemental brief (ECF No. 117), which contained proposed findings of fact along with conclusory statements that decisions were arbitrary and capricious, that the Plan Administrator is responsible for the erroneous distribution of participation statements, and that Mr. Cohen's testimony was in retaliation for Plaintiff's exercise of his rights.  Attached to the brief are "copies of announcements from TCE that show [Plaintiff's] rapid promotions/advancement at TCE" and W-2 statements he received from TCE.[4]  He claims that the documents are to rebut the testimony of Mr. Cohen.

Defendants naturally and properly oppose this filing. (ECF No. 118).

The court will not consider any of the documents submitted with the supplemental filing.  The record was not kept open for the submission of additional evidence—only legal argument was permitted.  As stated numerous times before, Plaintiff squandered

---

[4] Characteristically, counsel filed documents that contain unredacted social security numbers on the public docket with no motion to seal.  (ECF No. 117-2).  The court directed the clerk to place them under seal.  Because they will not be considered, Plaintiff will not be required to correct this error.

8

his litigation opportunity to disclose documents and will not be permitted to rely on any documents at this extremely late date.

**III. Findings of Fact and Conclusions of Law**

    **A.   Count One**

Count One seeks the payment of benefits under the PS Plan in the amount of $571,209.67 and is brought under 29 U.S.C. § 1132(a)(1)(B). Plaintiff must prove that the employee benefit plan is covered by ERISA, that he is a participant in the plan, and, at some point, that he exhausted administrative remedies. Defendants do not contest the applicability of ERISA to the PS Plan, but no one has provided the court with the plan itself. How the court is to determine whether Mr. Nordman is a participant without seeing the plain language as to who is a participant is far from clear. Defendants vigorously dispute that Plaintiff is a participant in the PS Plan and have produced written waivers of his option to not participate.

As found in earlier opinions, TCE historically has sponsored multiple retirement programs. (ECF No. 79-4 ¶ 13). One of the programs is the PS Plan. (ECF Nos. 79-4 ¶ 13; 79-5, at 2-83). On January 1, 2015, the PS Plan merged with the TCE Pension Trust, which included a money purchase benefit (the "MP Plan" or the "Pension Plan"). (ECF Nos. 79-4 ¶ 15; 79-8, at 2-71). As a result of that merger, the PS Plan now offers a traditional 401(k) benefit, profit-sharing benefit, and pension plan benefit. (ECF

Nos. 79-4 ¶ 16; 79-7, at 5, 6).  TCE employees are eligible to receive the profit-sharing benefit and pension benefit unless certain exceptions apply.  (ECF No. 79-7, at 5).  One exception to eligibility is an express waiver of the right to receive a benefit or participate in a plan.  (ECF No. 79-6, at 6 ("Opt-Out.  An Employee may irrevocably elect not to participate in the Plan: [X] Yes [ ] No")).  Waiver was also a feature of the MP Plan prior to the merger.  (ECF No. 79-8, at 28 ("3.8 ELECTION NOT TO PARTICIPATE - An Employee may, subject to the approval of the Employer, elect voluntarily not to participate in the Plan.")).

Plaintiff has the burden to prove that he is a participant in the pension plan.  Although he was an eligible employee when hired, he clearly waived his right to participate at that time.  Other than himself, no one testified to any efforts, after the waivers, by him to become a participant.  Mr. Cohen denied that he had any conversation with Mr. Nordman about becoming a member.  Although Mr. Nordman may have received account statements for the pension plan when he received the statements for the TCE Employee Stock Ownership Plan (ESOP), Defendants contend that it would have been in error, based on a miscommunication between their bookkeeper and the outside accountants.

Mr. Nordman's evidence of his change of heart is simply unconvincing.  And this is troubling.  As noted at the outset, a lot of money is at stake.  Mr. Nordman did little to no discovery,

10

has produced no documents for trial, and simply asserts that he must be a participant because he says that he received statements over the years seeming to reflect his participation. He has not produced any admissible documentation in an area where documentation should undoubtedly be available. His effort to put the burden on Defendants to disprove his assertions is obviously misplaced, as is his reliance on the doctrine of laches. It is, and always has been, his burden to prove his status; not theirs to disprove it. Without more, the court finds that he has failed to prove that he was a participant in the PS Plan.

### B.   Count Four: Receipt of Documents

ERISA Section 1024(b)(3) requires administrators to "furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules . . . and such other material . . . as is necessary to fairly summarize the latest annual report" within 210 days after the close of the fiscal year regardless of whether the participant requests them. Section 1024(b)(4) requires administrators to "furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated" upon written request. Section 1132(c)(1)(B) provides that any administrator who "fails or refuses to comply with a request for any information which such administrator is required

11

by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable . . . in the amount of up to $100 a day from the date of such failure or refusal.[5]  Thus, the penalty applies only when the participant shows that he or she has requested the documents in writing.

In the summary judgment ruling, the court found that Plaintiff was entitled to summary judgment as to liability with respect to Defendants' failure to deliver the 2017-2018 and 2018-2019 ESOP Summary Annual Reports ("SARs").[6]  The court deferred the imposition of any particular monetary penalty.  Plaintiff was provided an opportunity to brief the amount of the statutory penalty, but did not.  Defendants argue that he has waived any argument on prejudice or harm, and that no penalties should be imposed.  (ECF No. 118, at 16-17).

> Under 29 U.S.C. § 1132(c)(1), the district court may, in its discretion, impose penalties of up to $100 [(now $110)] per day against plan administrators who

---

[5] The maximum penalty was raised to $110 per day for violations occurring after July 29, 1997.  29 C.F.R. § 2575.502c-1.

[6] Because the question of Plaintiff's participation in the PS Plan could not be resolved on summary judgment, adjudication of Defendants' liability as to the delay in providing the 2017-2018 and 2018-2019 PS Plan SARs was left for trial.  As found above, Plaintiff has not proven that he was a participant in the PS Plan and thus was not entitled to those documents.  Similarly, other portions of Count Four not pertaining to the ESOP SARs were not considered on summary judgment and were still part of the case to be tried.  Plaintiff, however, did not pursue such claims.  Accordingly, judgment will be entered in favor of Defendants as to all claims other than the 2017-2018 and 2018-2019 ESOP SARs.

12

> fail to furnish certain documents requested by plan participants under ERISA. *See Faircloth v. Lundy Packing Co.,* 91 F.3d 648, 659 (4th Cir. 1996). "Two factors generally guide [the] district court's discretion: prejudice to the plaintiff and the nature of the administrator's conduct in responding to the participant's request for plan documents." *Davis* [*v. Featherstone*], 97 F.3d [734, 738 (4th Cir. 1996)]; *see also Faircloth*, 91 F.3d at 659 (noting that the court may consider prejudice and bad faith in exercising its discretion).

*Mullins v. AT & T Corp.*, 424 F.App'x 217, 225–26 (4th Cir. 2011) (second alteration in original). Moreover,

> "Although prejudice is a pertinent factor for the district court to consider, it is not a prerequisite to imposing a penalty." *Davis*, 97 F.3d at 738. It is also not necessary that the plan administrator's conduct rise to the level of bad faith. *Id*. Rather,
>> [t]he purpose of the penalty provision is to provide plan administrators with an incentive to meet requests for information in a timely fashion. When there is some doubt about whether a claimant is entitled to the information requested, the Supreme Court has suggested that an administrator should err on the side of caution.
>
> *Id*. (citation omitted); *see also Faircloth*, 91 F.3d at 659 ("The purpose of [§ 1132(c)(1)] is not to compensate participants for injuries, but to punish noncompliance with ERISA.").

*Id*. at 226 (alterations in original) (upholding statutory penalty of $25 per day, rather than maximum $100 per day)

Plaintiff's counsel emailed an attachment to Defendants' counsel on February 12, 2020, requesting the 2017-2018 and 2018-2019 ESOP SARs. (ECF No. 80-2, at 4-6). Plaintiff's counsel also followed up via email on February 26, 2020. (*Id.* at 3). Defendants did not send the requested documents by mail. The court earlier

rejected their argument that maintaining the documents in TCE's accounting/HR room was an adequate substitute because Section 1132 of ERISA requires the administrator to furnish them by mail.

The court has discretion to award a statutory penalty of up to $110 per day starting on March 13, 2020, 30 days after February 12, 2020, when Plaintiff's counsel requested the 2017-2018 and 2018-2019 ESOP SARs in writing.  (*Id.* at 4-6); 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1.  This court issued its summary judgment ruling on March 1, 2024, and it appears that Defendants provided the documents later that month. (*See* ECF No. 110, at 3).  Thus, the delay was approximately 4 years.[7]

There was a flurry of ERISA-themed activity just after Plaintiff left TCE, with various inquiries and requests.  Some of the requests were met with compliance, while these few were not. Plaintiff has not sought to prove prejudice or bad faith with respect to the ESOP plan documents, and the bulk of Plaintiff's claims relate to the PS Plan and not to the ESOP plan.  Given the purpose of statutory penalties, it is appropriate to award some, but not nearly at the maximum level.  There was some lack of diligence in the response to Plaintiff's multiple requests. Accordingly, the court will award Plaintiff the sum of $14,800, representing approximately $10 per day.

---

[7]  There were 1,480 days between March 13, 2020, and March 31, 2024.

14

**C.   Conclusion**

For the foregoing reasons, judgment will be entered in favor of Plaintiff and against TCE on the portion of Count Four relating to the delay in providing the 2017-2018 and 2018-2019 ESOP SARs.[8] Judgment will be entered in favor of Defendants as to Count One because Plaintiff has not proven that he was a participant in the PS Plan, and as to all remaining aspects of Count Four.  A separate order will follow.

                                          /s/
                              DEBORAH K. CHASANOW
                              United States District Judge

---

[8] Plaintiff testified at trial that he does not seek relief against the individual Defendants.  (ECF No. 116, 109:6-9).

15